# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EXPERIS US LLC,
d/b/a JEFFERSON WELLS,

     Plaintiff,

     v.

PARKE BANCORP, INC.,
d/b/a PARKE BANK,

     Defendant.

Case No. 26-CV-217

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS
## OR ALTERNATIVELY, TO TRANSFER VENUE

This breach of contract actions arises out of an agreement for professional services entered into between Experis US LLC, d/b/a Jefferson Wells ("Experis") and Parke Bancorp, Inc., d/b/a Parke Bank ("Parke Bank"). (Compl., Docket # 1.) Experis alleges that Parke Bank failed to pay invoices for work Experis completed on Parke Bank's behalf in the amount of $1,119,947.50. (*Id.*) Parke Bank moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) on the grounds that this Court lacks personal jurisdiction over it and that venue in this district is improper. (Docket # 8.) Alternatively, Parke Bank asserts that this action should be transferred to the District of New Jersey. For the reasons set forth below, Parke Bank's motion is granted and this case is dismissed.

## BACKGROUND

Experis is a Wisconsin limited liability company with its principal office located in Milwaukee, Wisconsin. (Compl., ¶ 1.) Experis' sole member is ManpowerGroup Global, Inc., a Wisconsin domestic corporation with its principal office located in Milwaukee. (*Id.*)

Parke Bank is a New Jersey corporation with its principal office located in Sewell, New Jersey. (*Id.* ¶ 2.) Ralph Gallo, Parke Bank's Executive Vice President and Chief Operating Officer, avers that Parke Bank is a small bank, local to Southern New Jersey and the Philadelphia area, that provides personal and business financial services to individuals and small to mid-sized businesses. (Declaration of Ralph Gallo ("Gallo Decl.") ¶¶ 2–3, Docket # 10.) Parke Bank has approximately 100 employees, located in New Jersey and Pennsylvania, with one employee located in South Carolina. (*Id.* ¶ 7.) Gallo avers that substantially all of Parke Bank's business is limited to customers in New Jersey, Pennsylvania, and New York, with New Jersey customers holding 77% of Parke Bank's accounts. (*Id.* ¶ 11.) Parke Bank holds five accounts, approximately 0.02% of its total accounts, for customers with Wisconsin mailing addresses. (*Id.* ¶ 12.)

C. Michael Baron, Experis' National Practice Leader, Financial Services, avers that Parke Bank initiated contact with Experis through a referral from a consultant working with Parke Bank who introduced the parties in connection with Parke Bank's need for BSA Staffing Assessment services. (Declaration of C. Michael Baron ("Baron Decl.") ¶ 3, Docket # 12-1.) Gallo agrees that in July 2025, Parke Bank engaged Experis to perform consulting services in connection with upcoming compliance examinations by New Jersey and federal regulatory bodies. (Gallo Decl. ¶ 16.) Gallo avers that Parke Bank's contract with Experis was its only contract with a Wisconsin-based vendor in recent years and that the contract was negotiated and executed entirely through phone calls and emails among representatives of Parke Bank in New Jersey or Pennsylvania and Experis' representatives. (*Id.* ¶ 15.)

On July 7, 2025, the parties executed a Master Services Agreement ("MSA" or the "Agreement"). (Compl., ¶¶ 5–6, Ex. A.) Specifically, Parke Bank contracted with Experis'

"Jefferson Wells Division." (*Id.*) Baron avers that Jefferson Wells is not a separate legal entity from Experis. (Baron Decl. ¶ 2.) Section 1 of the MSA states that the parties' agreement includes any statement of work or assignment order executed. (Compl., Ex. A, Docket # 1 at 10.) On July 7, 2025, the parties entered into one such statement of work agreement—the Look Back Consulting Services agreement (the "Look Back Agreement" or "Statement of Work Agreement"). (*Id.* ¶¶ 8–9, Ex. B.) Under the Look Back Agreement, Experis agreed to provide professional services to Parke Bank beginning on July 14, 2025. (*Id.* ¶ 10.) Parke Bank agreed to pay Experis for the services rendered under the Agreement pursuant to the fees and rates set forth in the Agreement, and Experis was to invoice Parke Bank on a bi-weekly basis. (*Id.* ¶¶ 11–13.) Parke Bank was to pay Experis within 30 days of receipt of an undisputed invoice. (*Id.* ¶ 14.)

On August 1, 2025, the parties executed an additional statement of work agreement, the BSA Alerts Backlog Clearance Services agreement (the "Backlog Agreement" or "Statement of Work Agreement"). (*Id.* ¶¶ 17–18, Ex. C.) Under this Agreement, Experis agreed to provide professional services to Parke Bank beginning on August 6, 2025. (*Id.* ¶ 19.) As in the Look Back Agreement, under the Backlog Agreement, Parke Bank agreed to pay Experis for the services rendered pursuant to the fees and rates set forth in the Agreement, Experis was to invoice Parke Bank bi-weekly, and Parke Bank was required to pay the invoices within 30 days of receipt. (*Id.* ¶¶ 20–23.)

Section 4 of the MSA provides that either party may terminate the Agreement or any individual statement of work immediately upon notice to the other party if the other party breaches any of its material duties or obligations under the Agreements and does not cure such breach within 10 business days after notice thereof, or fails to make any payments within

the time periods specified. (*Id.* ¶ 26.) Section 4 further provides that upon termination of the MSA or any individual statement of work, Experis agrees to provide an invoice to Parke Bank for all fees incurred but unpaid by Parke Bank under the MSA or individual statement of work as applicable and Parke Bank agrees to pay the amount set forth within 30 days of receipt. (*Id.* ¶¶ 27–28.) Also, Section 9 of the MSA includes a provision that states:

> This Agreement will be governed in all respects by the laws of the State of New Jersey, without regard to its conflict of laws principles. The parties consent to the jurisdiction of any state or federal court in New Jersey for the resolution of any disputes in connection with this Agreement.

(Compl., Ex. A at 12.)

Experis asserts that it fulfilled all of its obligations under the parties' Agreements. (Compl., ¶¶ 29–30.) It alleges that Parke Bank, however, consistently requested that Experis perform work outside the scope of the Agreement; refused to execute written change orders to reflect the modified scope of work requested; and was unresponsive to several of Experis' requests for additional information, assistance, and the ability to install an automated tool to Parke Bank's systems that would facilitate Experis completing the tasks contemplated by the Statements of Work. (*Id.* ¶ 31.) Experis alleges that it invoiced Parke Bank for the services it provided under the Agreement but Park Bank failed to make any payment whatsoever to Experis. (*Id.* ¶ 32.) Experis notified Parke Bank that it was in breach of the Agreement on November 18, 2025. (*Id.* ¶ 33, Ex. D.) In response to the notice, Parke Bank allegedly refused to meet with Experis and indicated that the parties were at an impasse. (*Id.* ¶ 35.)

Experis alleges that it terminated the MSA, the Lookback Agreement, and the Backlog Agreement on November 19, 2025, based on Parke Bank's refusal to timely pay as specified in the MSA. (*Id.* ¶¶ 36–37, Ex. E.) Experis asserts that it promptly invoiced Parke Bank for

4

all previously unbilled amounts due under the Agreement following termination, totaling $1,119,947.50 for professional services rendered under the Agreement. (*Id.* ¶ 39.)

## ANALYSIS

Parke Bank moves to dismiss Experis' complaint under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue. Alternatively, Parke Bank seeks to have the action transferred to the District of New Jersey. I will address each argument in turn.

### 1. *Personal Jurisdiction*

#### 1.1 Legal Standards

The plaintiff bears the burden of establishing personal jurisdiction; however, where, as here, the issue is raised on a motion to dismiss, the plaintiff need only make a *prima facie* showing of jurisdictional facts. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The Court must accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff. *Id.* A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *Purdue Rsch. Found.*, 338 F.3d at 779. "A federal court sitting in Wisconsin may exercise jurisdiction only if it comports with Wisconsin's long-arm statute, Wis. Stat. § 801.05, and Fourteenth Amendment due process." *Webber v. Armslist LLC*, 70 F.4th 945, 953 (7th Cir. 2023).

Under Wisconsin's long-arm statute, personal jurisdiction over nonresident defendants is of two basic types: general personal jurisdiction and specific personal jurisdiction. *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶ 15, 335 Wis. 2d 1, 12, 803 N.W.2d

5

623, 629. If general personal jurisdiction is accorded over a nonresident defendant, the defendant may be brought before Wisconsin courts for claims that are unrelated to the defendant's activities in Wisconsin. *Id.* "On the other hand, specific personal jurisdiction is more limited in nature. In the exercise of specific personal jurisdiction, the claim for relief for which personal jurisdiction is sought must be substantially connected to or arise out of the defendant's contacts with Wisconsin." *Id.*

Wisconsin employs a two-step inquiry in determining whether personal jurisdiction may be exercised over an out-of-state defendant. *Id.* ¶ 16. Step one is determining whether the defendant meets the criteria for personal jurisdiction under Wisconsin's long-arm statute. *Id.* If the statutory criteria are satisfied, then in step two, the court must consider whether the exercise of jurisdiction comports with the requirements of due process. *Id.* Wisconsin's long-arm statute is liberally construed in favor of exercising personal jurisdiction. *Id.* ¶ 17.

### 1.2 Request for Jurisdictional Discovery

As an initial matter, Experis requests a brief period to take discovery for the limited purpose of establishing jurisdiction. (Docket # 12 at 25.) It states that it is presently unable to determine the number, either in quantity or dollar value, of accounts held by Parke Bank customers with Wisconsin mailing addresses; loans to individuals with Wisconsin mailing addresses; or the "full extent" of Parke Bank's contacts with Wisconsin by other means. (*Id.*)

In support of its motion to dismiss, however, Parke Bank submits the declaration of Ralph Gallo, its Executive Vice President and Chief Operating Officer, who swore, under penalty of perjury, the number and dollar value of Parke Bank's accounts held by customers with a Wisconsin mailing address, the amount of outstanding loans to individuals with a Wisconsin mailing address, and Parke Bank's contacts with Wisconsin by other means (i.e.,

6

the lack of employee travel to Wisconsin for business, the lack of purposeful advertising directed at Wisconsin, etc.) (*See generally* Gallo Decl., Docket # 10.) Thus, it is unclear what additional discovery is needed to resolve this motion. Experis' motion for jurisdictional discovery is therefore denied.

### 1.3 General Jurisdiction

Under Wisconsin law, general jurisdiction exists over an out-of-state defendant, who, when the action is commenced, is "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Wis. Stat. § 801.05(1)(d). "In evaluating whether general personal jurisdiction lies over a nonresident defendant pursuant to Wis. Stat. § 801.05(1)(d)," the Court "must determine whether the defendant has engaged in 'substantial and not isolated activities' in Wisconsin." *Rasmussen*, 2011 WI 52, ¶ 19. This examination "encompasses the defendant's general contacts with the state" and considers the following five factors: the quantity of the contacts, the nature and quality of those contacts, the source and connection of the contacts to the claim made, and the interest of Wisconsin in the action and the convenience of the parties. *Id.*

However, even when the statutory criteria articulated in § 801.05(1)(d) are met, general personal jurisdiction may nevertheless be limited by the requirements of due process. *Id.* ¶ 18. In analyzing whether due process is met, Wisconsin courts consider the same five factors listed above for determining whether the defendant engaged in "substantial and not isolated activities." *Id.* ¶ 21. Thus, although the court's analysis of personal jurisdiction is two-fold, "at least with respect to claims of jurisdiction under Wis. Stat. § 801.05(1)(d), the analyses overlap." *Vesuvius Techs., LLC v. ServerCentral, Inc.*, No. 12-CV-1161, 2013 WL 1879107, at *2 (E.D. Wis. May 3, 2013).

Experis argues that the test for general jurisdiction is met with respect to Parke Bank. (Docket # 12 at 6.) It points to Parke Bank's acknowledgment that five of its accounts are held by customers with Wisconsin mailing addresses and that Parke Bank has some outstanding loans to individuals with Wisconsin mailing addresses. (*Id.*) Experis further argues that the transaction at issue in this case—a $1.1 million contractual relationship with a Wisconsin company spanning several months—demonstrates Parke Bank's substantial and not isolated activities in Wisconsin. (*Id.* at 6–7.) It argues that Parke Bank affirmatively engaged a Wisconsin company and Experis' personnel located in Wisconsin logged a substantial number of hours for services performed in Wisconsin. (*Id.*) Finally, Experis argues that Wisconsin has an unquestionable interest in providing a forum for its domestic companies to redress contract disputes. (*Id.* at 7.)

Parke Bank's contacts with Wisconsin fall short of conferring general personal jurisdiction over it. Again, the constitutional requirement for general jurisdiction is "considerably more stringent" than that required for specific jurisdiction. *Purdue Rsch. Found.*, 338 F.3d at 787. To exercise general personal jurisdiction, a defendant's contacts "must be so extensive to be tantamount to [defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [that state's] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Id.* While Experis points to the fact Parke Bank holds five accounts for customers with a Wisconsin mailing address, this constitutes approximately 0.02% of Parke Bank's total accounts. (Gallo Decl. ¶ 12.) Further, Parke Bank avers that these accounts could not have been opened in Wisconsin because only customers located in New Jersey, Pennsylvania, New York, Delaware, South Carolina and North Carolina can open accounts online. (*Id.*) All other

8

customers must open an account in person in either New Jersey or Pennsylvania. (*Id.*) In other words, the Wisconsin connection is simply fortuitous. Parke Bank did not affirmatively seek out Wisconsin customers. Rather, these five account holders, while not present in Wisconsin, provided Wisconsin mailing addresses when opening an account at a bank with no physical presence in Wisconsin. They could have just as easily had mailing addresses anywhere in the country.

Nor does the fact Parke Bank has outstanding loans to individuals with Wisconsin mailing addresses demonstrate sufficient contacts. Parke Bank avers that less than 0.1% of the total dollar amount of its outstanding loans constitute loans to individuals with a Wisconsin mailing address. (Gallo Decl. ¶ 13.) Also and importantly, the collateral for those loans is located in Philadelphia, not in Wisconsin. (*Id.*) These contacts are not so extensive to be tantamount to Parke Bank's constructive presence in Wisconsin.

Further, while Wisconsin has an interest in vindicating the rights of its domestic corporations, this factor is far less compelling when weighed against the comparative convenience to the parties. Parke Bank has no branches, offices, places of business, or employees located in Wisconsin and its employees do not travel to Wisconsin for business. (*Id.* ¶¶ 5–8.) Thus, a Wisconsin forum presents significant inconveniences for Parke Bank when again, it has no physical presence in Wisconsin. *See Dorf v. Ron Mar. Co.*, 99 F. Supp. 2d 994, 998 (E.D. Wis. 2000) (finding that the convenience of the parties did not weigh against the forum because the defendant could "drive from his office in Schaumburg to the federal courthouse in Milwaukee in little more time than it would take to get to the federal courthouse in Chicago").

9

Finally, Experis incorrectly relies on the contacts underlying this specific case to support its argument in favor of general jurisdiction. As stated above, general jurisdiction encompasses a defendant's *general* contacts with a state. The factor addressing the "source and connection of the contacts to the claim made" is not a repackaging of specific jurisdiction. For general jurisdiction, a defendant must be engaged in substantial and not isolated activities within Wisconsin at the time the action commenced. Wis. Stat. § 801.05(1). Parke Bank avers that the contract with Experis underlying the dispute in this case was Parke Bank's only contract with a Wisconsin vendor in recent years. (Gallo Decl. ¶ 15.) Thus, at the time this lawsuit commenced, Parke Bank's contacts with Wisconsin, though not non-existent, were infinitesimal. And those general contacts have no connection to the present cause of action. *See Burlingham v. U.S. Dep't of Health & Hum. Servs.*, No. 22-CV-1134, 2023 WL 6390798, at *11 (E.D. Wis. Sept. 30, 2023) (finding when source of defendant's contacts in Wisconsin has no connection to cause of action, this weighs strongly against conclusion that defendant has substantial and not isolated activity in Wisconsin sufficient to subject it to general jurisdiction).

Thus, Experis fails to make a *prima facie* showing that Parke Bank is subject to general personal jurisdiction in Wisconsin pursuant to Wis. Stat. § 801.05(1)(d).

    1.4    Specific Jurisdiction

Wisconsin's long-arm statute lists numerous activities that can give rise to specific personal jurisdiction over an out-of-state defendant. Experis argues that this Court has personal jurisdiction over Parke Bank under three provisions of Wisconsin's long-arm statute—§ 801.05(4)(a), § 801.05(5)(a), and § 801.05(5)(b).

### 1.4.1 Wis. Stat. § 801.05(4)(a)

First, Experis asserts that this Court has personal jurisdiction pursuant to § 801.05(4)(a). Section 801.05(4)(a) provides personal jurisdiction in any action "claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury . . . [s]olicitation or service activities were carried on within this state by or on behalf of the defendant." Experis argues that when Parke Bank failed to pay for work Experis provided, Experis suffered injury in the amount of $1,119,947.50 in Wisconsin, where the resulting loss of revenue impacted its financial condition. (Docket # 12 at 8.) It further argues that at the time of injury, service activities were being carried out in Wisconsin on Parke Bank's behalf, as at least one Experis employee located in Wisconsin performed 583 service hours for regulatory compliance work for Parke Bank. (*Id.*)

While noting that "solicitation and service activities" as used in § 801.05(4)(a), is not defined in the statute, the Wisconsin Court of Appeals has found that the term "requires that a defendant (or its representative) be engaged in some type of regular, ongoing or repetitive activities in Wisconsin." *Hous. Horizons, LLC v. Alexander Co.*, 2000 WI App 9, ¶¶ 9, 14, 232 Wis. 2d 178, 184, 188, 606 N.W.2d 263, 266–67. And while jurisdiction "cannot be avoided simply because a defendant did not physically enter the forum state," a potential defendant "should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions." *Felland*, 682 F.3d at 673.

Experis has not shown that Parke Bank engaged in "service activities" as contemplated by the statute. Both the Look Back Agreement and the Backlog Agreement provide that Experis' employees will work remotely. (Compl., Ex. B at 1; Ex. C. at 1.) The Look Back

11

Agreement further provides that if Parke Bank does require Experis employees to work onsite, it will be at Parke Bank in New Jersey. (Compl., Ex. B at 1.) Both Statement of Work Agreements contemplate Experis' employees using a Parke Bank-provided laptop for their remote work and to observe Parke Bank's "reasonable policies regarding working conditions and business hours." (Compl., Ex. B at 1; Ex. C. at 1.)

And while Experis is organized under Wisconsin law and maintains its headquarters in Milwaukee (Baron Decl. ¶ 1), it conducts its work from locations all over the United States (*see id.* ¶ 11). Experis does not contest that each member of its "Engagement Team" referenced in the Look Back and Backlog Agreements was based outside of Wisconsin, most prominently in Jefferson Wells' New York City offices. (Gallo Decl. ¶¶ 21–30.) Further, it does not contest that of the 26 staff members working on the project, only one had a Wisconsin address. (Gallo Decl. ¶ 33; *see* Pl.'s Br. at 8 (noting "at least one" employee was located in Wisconsin).) Parke Bank's only authority to dictate where Experis' employees worked was to require onsite work at Parke Bank in New Jersey. Otherwise, Experis employees had the freedom to work remotely from any location. Parke Bank had no control over the single Experis employee's decision to work in Wisconsin. Thus, while this employee may have provided services on Parke Bank's behalf in Wisconsin, Parke Bank had no control over the jurisdictional consequences of this employee's actions. As such, the Court lacks personal jurisdiction under Wis. Stat. § 801.05(4)(a).

### 1.4.2   Wis. Stat. § 801.05(5)(a)

Next, Experis argues personal jurisdiction is conferred under § 801.05(5)(a), which provides personal jurisdiction in any action which "[a]rises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform

12

services within this state or to pay for services to be performed in this state by the plaintiff." Wis. Stat. § 801.05(5)(a). Experis argues that this subsection provides personal jurisdiction because Parke Bank promised through its Agreements to pay Experis for regulatory compliance services that it administered from its Wisconsin headquarters, and performed in part in Wisconsin. (Docket # 12 at 9.)

Like Experis' argument that § 801.05(4)(a) confers personal jurisdiction, its reliance on § 801.05(5)(a) similarly fails. Parke Bank did not perform services in Wisconsin, nor did it pay for services to be performed in Wisconsin. At most, Parke Bank contracted with a company that while organized and headquartered in Wisconsin, otherwise has offices all over the United States. (Docket # 13 at 7.) The contract alone is insufficient to confer personal jurisdiction. *See CITGO Petroleum Corp. v. MTI Connect, LLC*, 2020 WI App 57, ¶ 23, 394 Wis. 2d 126, 141, 949 N.W.2d 577, 585 ("A corporation's 'contract with an out-of-state party *alone*' is not enough to automatically establish the requisite minimum contacts.") (internal citation omitted) (emphasis in original). Again, the Statement of Work Agreements provide that Experis' employees could work remotely and the parties do not dispute that all but one of the employees on this project worked outside of Wisconsin. Thus, it cannot reasonably be said that Parke Bank agreed to pay for Experis to perform services in Wisconsin. Jurisdiction under this provision similarly fails.

### 1.4.3   Wis. Stat. § 801.05(5)(b)

Finally, Experis points to § 801.05(5)(b) as conferring personal jurisdiction over Parke Bank in Wisconsin. Under § 801.05(5)(b), personal jurisdiction is conferred in an action arising out of "services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such

performance within this state was authorized or ratified by the defendant." Wis. Stat. § 801.05(5)(b). Experis argues that by knowingly entering into an Agreement with a Wisconsin company, it authorized services to be performed in Wisconsin. (Docket # 12 at 9.)

But again, as explained above, simply contracting with a Wisconsin company is not enough to confer personal jurisdiction. The contract explicitly provides that the Experis employees working on the project could work remotely. And the parties do not dispute that all but one of the employees did, in fact, work outside of Wisconsin. Parke Bank cannot be said to have authorized or ratified work on its behalf within Wisconsin when nothing in the Agreement contemplates work within this state. For these reasons, Experis' argument pursuant to § 801.05(5)(b) also fails.

### 1.5 Due Process Considerations

Even if Parke Bank met the criteria for personal jurisdiction under Wisconsin's long-arm statute, the exercise of jurisdiction in Wisconsin fails to comport with the requirements of due process. The Seventh Circuit has explained that although Wisconsin courts treat the personal jurisdiction analysis as a two-step process, putting the statutory question before the constitutional one, "the constitutional and statutory questions tend to merge; compliance with the Wisconsin long-arm statute creates a presumption that constitutional due process is satisfied, although the defendant of course has the opportunity to dispute personal jurisdiction on purely constitutional grounds." *Felland*, 682 F.3d at 678. Thus, because I find Parke Bank does not meet the criteria under Wisconsin's long-arm statute, no such presumption of constitutionality exists.

Even so, the "key issue" for constitutional purposes is whether the defendant has sufficient minimum contacts with the forum state such that "the maintenance of the suit does

14

not offend traditional notions of fair play and substantial justice." *Id.* at 673 (internal quotations and citations omitted). The defendant must have "purposely established minimum contacts with the forum state such that he or she should reasonably anticipate being haled into court there." *Id.* (internal quotations and citation omitted). And a potential defendant should have some control over the jurisdictional consequences of its actions. *Id.* Stated differently, "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Purdue Rsch. Found.*, 338 F.3d at 780.

Experis argues that due process is satisfied in this case because Parke Bank sought out a Wisconsin company to work with; communicated using Experis' operational systems, some of which are maintained in Wisconsin; attended meetings hosted on Experis' Milwaukee-based technological infrastructure, as seen by the meeting's Milwaukee-area dial-in telephone number; at least one Experis employee performed work while located in Wisconsin; and the revenue generated by the parties' Agreement was recoded on Experis' books in Wisconsin. (Baron Decl. ¶¶ 6–12.)

Experis likens its situation to that in *Kerkman v. D'Amico*, No. 20-CV-1779, 2021 WL 4441189 (E.D. Wis. Sept. 28, 2021). In *Kerkman*, Kerkman, a Milwaukee attorney, met D'Amico, an Arizona resident and the CFO of a publishing company, in 1994 when Kerkman was lead counsel of the publishing company's bankruptcy case. *Id.* In 2003, D'Amico contacted Kerkman to ask him to draft an employment contract between her and a new company. *Id.* The two communicated via telephone and email regarding the employment contract, but Kerkman did not charge her for his services. *Id.*

In April 2006, D'Amico was terminated under this employment agreement. *Id.* She contacted Kerkman asking for a reference for a new position and hired an Arizona law firm to mediate her termination. *Id.* Then, in June 2006, Kerkman invited D'Amico to Milwaukee for a social visit. *Id.* During this visit, the parties discussed the possibility of D'Amico hiring Kerkman's firm to represent her in the employment dispute. *Id.* After the mediation ended unsuccessfully, D'Amico officially asked Kerkman to represent her. *Id.* Kerkman drafted a retainer agreement in Milwaukee and emailed it to D'Amico, and the next day emailed her a draft complaint. *Id.* The Arizona firm signed and filed the complaint in Arizona state court. *Id.*

Kerkman and D'Amico executed a retainer agreement, expressly stating that Kerkman was not licensed to practice law in Arizona and that the Arizona firm was retained as local counsel to provide Kerkman admittance on a *pro hoc vice* basis. *Id.* at *2. Kerkman asserts that while he traveled to Arizona and California for depositions and court appearances, most of the legal work was performed in Milwaukee. *Id.* When D'Amico failed to pay Kerkman's fees, he sued her for breach of contract in Wisconsin state court. *Id.* at *4. The case was removed to federal court and D'Amico moved to dismiss the complaint for lack of personal jurisdiction. *Id.* The court disagreed, finding that Kerkman carried his burden of showing that the court had personal jurisdiction under the Wisconsin long-arm statute and under the principles of due process. *Id.* at *10. In so finding, the court considered that D'Amico chose to enter into a contract with a Wisconsin attorney whom she knew was not licensed in Arizona, whose offices were located in Wisconsin, and was aware that Kerkman and other lawyers at his firm would be drafting complaints and crafting legal arguments on her behalf in Wisconsin. *Id.* at *8.

16

Parke Bank's asserted contacts with Wisconsin are a far cry from those of D'Amico. D'Amico, who knew Kerkman for years and worked with him on a prior occasion, was clearly aware Kerkman performed legal services in Wisconsin. She sought out his representation, knowing he was not licensed in Arizona, and received legal documents that he or his colleagues prepared at their Milwaukee office. In contrast, while Experis is organized, registered, and headquartered in Wisconsin, its Jefferson Wells division has locations all over the United States. (Docket # 13 at 7.) Parke Bank was introduced to Experis through a referral from a consultant working with Parke Bank. (Baron Decl. ¶ 3.) Parke Bank's representatives did not travel to Wisconsin to negotiate, discuss, or execute the Agreement. (Gallo Decl. ¶ 20.)

Unlike in *Kerkman*, where D'Amico knew the bulk of the legal work would be performed in Wisconsin, the parties here specifically agreed that Experis' employees assigned to Parke Bank's project would either work remotely, or onsite at Parke Bank. (Docket # 1 at 17, 27.) And of the 26 Experis employees working on the project, only one did, in fact, have a Wisconsin address. (Gallo Decl. ¶ 33.) Furthermore, while Experis argues that remote meetings between the parties utilized technological infrastructure located in Wisconsin, it is entirely unclear whether any of the individuals participating in the meetings were actually physically in Wisconsin at the time. Especially given that no one on Experis' assigned "Engagement Team," who were "selected specifically" to work on Parke Bank's project, worked out of Experis' Wisconsin offices. (*Id.* ¶¶ 21–30.)

More telling, the MSA contains a choice-of-law provision stating that New Jersey law governs the MSA. (Docket # 1 at 12.) Though not dispositive, that the parties agreed New Jersey law would govern the Agreement certainly weighs against Parke Bank's alleged

Wisconsin contacts. *See, e.g.*, *Healthfuse LLC v. CDH-Delnor Health Sys.*, No. 16-CV-560, 2017 WL 927624, at *5 (E.D. Wis. Mar. 8, 2017) (finding that "the parties expressly selected Illinois law to govern their contracts—a factor which, although not dispositive, courts have considered in assessing a defendant's minimum contacts with the forum state.").

Thus, unlike in *Kerkman*, none of Parke Bank's activities make it amenable to jurisdiction in Wisconsin. The most significant connection between this action and Wisconsin is that Experis is headquartered in Wisconsin and organized under Wisconsin law. This is insufficient to establish personal jurisdiction. *See Cote v. Wadel*, 796 F.2d 981, 984 (7th Cir. 1986) ("The only significant connection between the suit and Wisconsin is that the plaintiff lives there; and you cannot get jurisdiction over a nonresident just by showing that you are a resident and would prefer to sue in your own state's courts. By that reasoning, there would be no limits to personal jurisdiction over nonresidents."). Parke Bank's connections to Wisconsin are minimal, at best. It is a small local bank with locations and employees in New Jersey and Pennsylvania, with one employee located in South Carolina. Ninety-three percent of its accounts are held by customers in New Jersey and Pennsylvania. Parke Bank neither purposefully advertises nor directly solicits Wisconsin customers. A potential customer seeking to open a Parke Bank account could not do so online from Wisconsin but would need to travel to New Jersey or Pennsylvania. While Experis argues that Parke Bank sought out its services, it did so based on a referral from a consultant and it is unclear whether Parke Bank was even aware of the location of Experis' headquarters at that time. The parties did not negotiate or execute their contract in Wisconsin. Further, the parties specifically contracted for Experis' employees to work remotely—not in Wisconsin. And the single Experis employee who worked from a Wisconsin address unilaterally chose to do so. Further, none

18

of Experis' "Engagement Team," who Experis specifically selected to work on Parke Bank's project, worked in Wisconsin. And the parties chose New Jersey law to govern their Agreement. Thus, I find that exercising personal jurisdiction over Parke Bank in Wisconsin in this case offends traditional notions of fair play and substantial justice. Parke Bank's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is granted.

    2.     *Venue*

Parke Bank further moves to dismiss Experis' complaint based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3). For the purposes of a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the court must take all allegations in the complaint as true unless contradicted by the defendant's affidavits. *Est. of Moore v. Dixon*, 460 F. Supp. 2d 931, 935 (E.D. Wis. 2006). However, if there are disputed facts, all reasonable inferences must be drawn in the plaintiff's favor. *Id.* Once a defendant has sought dismissal on the basis of improper venue, the plaintiff bears the burden of proving that venue is proper. *Id.* The federal venue statute, 28 U.S.C. § 1391(b), provides that venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Experis argues that venue is proper under § 1391(b)(2) because a substantial part of the events giving rise to its claim occurred in this district. (Docket # 12 at 23.) The test for determining whether a "substantial part" of the events or omissions giving rise to a claim occurred in a particular district is more of a qualitative, rather than quantitative inquiry. *Est. of Moore*, 460

F. Supp. 2d at 936. The "substantiality" of the events which occurred in a particular district is determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum district, not by simply adding up the number of contacts. *Id.* The court must look to the entire sequence of events underlying the claim, rather than a single action which may have triggered the claim. *Id.* And, when determining whether a substantial part of the events giving rise to the claim occurred in a particular district, the court must focus on the activities of the defendant, not those of the plaintiff. *Id.* In applying the "substantial part" test to breach of contract cases, courts consider a number of factors including where the conduct underlying the breach occurred and where performance under the contract was to take place. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1016 (E.D. Wis. 2000).

Experis asserts that a substantial part of the events giving rise to its claim occurred in this district because Experis is located here, Experis performed "some" of its obligations under the Agreement here, and Experis sustained its injuries here. (Docket # 12 at 23.) Experis further argues that Parke Bank directed communications to Experis in Wisconsin. (*Id.* at 23–24.) I disagree. While Experis points to several factors, such as its location, the venue analysis focuses on the defendant's activities, not the plaintiff's. Again, the parties entered into a contract for services where Experis' employees were not required to work on Parke Bank's behalf in Wisconsin. Rather, the parties' Agreement allowed the project's work to be conducted remotely and save for a single Experis employee, none of the work was performed in Wisconsin. Further, while Experis points to Parke Bank directing communications to Experis in Wisconsin, once again, the entirety of Experis' "Engagement Team" assigned to oversee the project were located outside of Wisconsin. Thus, even if Experis' technological

20

infrastructure was used for the communications, there is no evidence that any of the individuals involved were physically present in Wisconsin at the time.

Experis argues that Parke Bank's non-payment of the fees owed was recorded on Experis' books in Wisconsin as receivables owed to that Wisconsin entity (Baron Decl. ¶ 12), and thus Experis suffered its injury in this district. But the breach allegedly occurred because Parke Bank promised to pay Experis for its professional services, Experis invoiced Parke Bank for its services, and Parke Bank failed to pay. (Compl. ¶¶ 38, 45–51.) The MSA provides that Jefferson Wells would invoice Parke Bank bi-weekly at Parke Bank's New Jersey address. (Docket # 1 at 10.) Thus, the action underlying the breach—Parke Bank's failure to pay Experis' invoices—occurred in New Jersey. For these reasons, a substantial part of the events giving rise to Experis' claim did not occur in this district. Parke Bank's motion to dismiss pursuant to Rule 12(b)(3) is granted.

> 3. *Whether the Case Should be Transferred or Dismissed*

Because I find that this case does not fall within one of the three categories set out in § 1391(b), this case must either be dismissed or transferred under 28 U.S.C. § 1406(a). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Congress enacted § 1406(a) to avoid "the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 608 (7th Cir. 2003) (internal quotation and citation omitted).

Parke Bank argues that this case should be dismissed rather than transferred because Experis' filing in this district was not an "erroneous guess." (Docket # 9 at 30.) It points to the fact the parties' Agreement contains a forum-selection cause stating that the parties consent to jurisdiction in New Jersey for resolution of disputes in connection with the Agreement and that Experis is a sophisticated party who either knew or should have known of Parke Bank's lack of connection with Wisconsin. (Docket # 9 at 30.) Experis argues that its filing suit in this district was not a product of gamesmanship but was a reasonable choice based on the "substantial connections" between this district and the claims at issue. (Docket # 12 at 24.) It argues that dismissal instead of transfer would serve "only to impose unnecessary costs and delay on the litigation." (*Id.*)

As to the parties' forum-selection clause, this does not weigh in favor of dismissal. Experis argues that the clause is plainly permissive, not mandatory. (*Id.* at 17–22.) Parke Bank, in contrast, does not assert that the clause is mandatory; rather, it argues that whether it is mandatory or permissive is immaterial to this case because venue is clearly improper here. (Docket # 13 at 2.) As articulated above, the provision in question states that the parties "consent to the jurisdiction of any state or federal court in New Jersey for the resolution of any disputes in connection with this Agreement." (Compl., Ex. A at 12.)

Under New Jersey law, which governs interpretation of the Agreement, I find that the forum-selection clause is permissive. "'A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause . . . dictates an exclusive forum for litigation under the contract.'" *Meridian Consulting I Corp., Inc. v. Eurotec Canada Ltd.*, No. CV1922197KMESK, 2021 WL 689132, at *11 (D.N.J. Feb. 22, 2021) (quoting *Dawes v. Pub. Am. LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014)). A clause that

22

only specifies a forum is permissive; "[t]o be regarded as mandatory, a clause must include some further language indicating the parties' intent to make jurisdiction exclusive." *Id.* (internal quotation and citation omitted). While the relevant provision specifies a forum both parties agree to (i.e., New Jersey), it contains no limiting language indicating that New Jersey is the *only* proper forum. Thus, the fact Experis did not file this action in New Jersey in the first instance does not necessarily support dismissal of this action over transfer.

I do not agree, however, with Experis' assertion that filing suit in this district was a "reasonable choice based on the substantial connections this District bears to the claims at issue." (Docket # 12 at 24.) The only significant connection between this case and Wisconsin is the fact Experis is organized under Wisconsin law and headquartered in Milwaukee. Experis is a much larger entity with offices all over the United States; Parke Bank is a small local bank with no presence in Wisconsin. Parke Bank was not seeking out a Wisconsin company, it learned of Experis through one of its consultants. In fact, Parke Bank avers that its contract with Experis was its only contract with a Wisconsin-based vendor in recent years.

In forming the contract, Parke Bank's representatives never traveled to Wisconsin to negotiate or execute the Agreement. Further, the parties clearly did not anticipate performance of the work in Wisconsin; the Experis employees were permitted to work remotely and to the extent work was to be performed on-site, it was to be performed at Parke Bank. Experis did not specifically assign Wisconsin-based employees to work as the project's "Engagement Team." On these facts, I cannot agree that Experis, as a sophisticated party, filed suit in Wisconsin based on the "substantial connections" between the claim and this district.

23

This is not a situation where the statute of limitations will run if this action is not transferred (although even the expiration of a statute of limitations does not, on its own, mandate transfer over dismissal). *See Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d at 608. And I do not agree that saving Experis time and money constitutes the interests of justice—Experis could have filed this case in New Jersey in the first instance. Thus, I find that dismissal, not transfer, is appropriate under § 1406(a).

For these reasons, Parke Bank's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) is granted for lack of personal jurisdiction and improper venue. Because I do not find the interests of justice served by transfer of this case, it is dismissed. *See* § 1406(a).

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Docket # 8) is **GRANTED**. The case is dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. The clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of July, 2026.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge

24